IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

DAVID W. STRIPLAND and PAULETTE    :
C. STRIPLAND                       :
                                   :
          Plaintiffs,              :
                                   :    Civil Action No.
v.                                 :    2:16-CV-00152-RWS-JCF
                                   :
WELLS FARGO BANK, N.A.,            :
                                   :
          Defendant.               :

## FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendant's Motion To Dismiss Plaintiffs'

Complaint (Doc. 6) and Defendant's Motion To Strike Plaintiffs' Amended

Complaint (Doc. 9). For the reasons discussed below, it is **RECOMMENDED**

that Defendant's motions be **GRANTED** and this action be **DISMISSED**.

## Factual and Procedural History[1]

---

[1] These facts are taken from Plaintiffs' Complaint (Doc. 1-2) and Amended
Complaint (Doc. 8), and from copies of documents referred to in the Complaint
and Amended Complaint that relate to the loan transactions and foreclosure
proceedings at issue, which are attached as exhibits to Defendant's motion to
dismiss (Docs. 6-2 to 6-7), to the Amended Complaint (*see* Doc. 8 at 41), to
Defendant's motion to strike the Amended Complaint (*see* Docs. 9-2, 9-3), and
Plaintiffs' response to Defendant's motion to strike (*see* Doc. 11 at 13-21).  In
ruling on a motion to dismiss, the court may consider documents attached to the
motion if those documents are central to the complaint and not in dispute.  *See
Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Okim v. Bank of Am.*,
No. 1:12-cv-01759-TWT-GGB, 2012 U.S. Dist. LEXIS 168788, at *7 (N.D. Ga.
Oct. 25, 2012) (noting that the court is authorized to consider documents attached

On December 12, 2001, Plaintiffs David and Paulette Stripland borrowed approximately $650,000 from First Alliance Bank to purchase their home at 5352 Franklin Goldmine Road, Cumming, Georgia and executed a 30 year promissory note and security deed.  (Doc. 1-2 ¶¶ 11-12).  In 2002 they refinanced that loan with Well Fargo Home Mortgage, Inc., "which has since been merged into Wells Fargo Bank, N.A."  (*Id.* ¶ 13).  In 2007 Plaintiffs refinanced the loan with Wells Fargo, and on April 27, 2007, Plaintiffs executed a promissory note in the amount of $900,000 and a Security Deed in favor of Wells Fargo, which contained a power of sale of Plaintiffs' Franklin Goldmine Road property in the event of default.  (*Id.* ¶¶ 14-15; *see also* Doc. 6-2).  On June 23, 2011, Wells Fargo assigned the Security Deed to HSBC Bank as Trustee for Wells Fargo Asset Securities Corp., Mortgage Pass-Through Certificates, Series 2007-10 ("HSBC"), by Assignment recorded in the property records of Forsyth County, Georgia on July 13, 2011.  (Doc. 6-3). Wells Fargo continued servicing the loan.  (*See* Doc. 11 at 17).

Beginning in 2011, "Plaintiffs were experiencing some business setbacks and inquired to Wells Fargo about one of the new Federal Programs designed to assist homeowners in keeping their homes."  (Doc. 1-2 ¶ 16).  Plaintiffs allege that they "were told they must be at least three (3) months in arrears on their mortgage

---

to motions to dismiss where "the document is central to Plaintiff's claims, and the authenticity of the document has not been challenged").  The Court may also take judicial notice of public records, such as real estate records and court filings.  *See Universal Express, Inc. v. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006).

before Wells Fargo could even look at modifying their loan." (*Id.*).  Plaintiffs then "resort[ed] to withholding their monthly payments so as to initiate a mortgage modification with Wells Fargo." (*Id.*).  Plaintiffs applied for a modification in April 2011 (*id.* ¶¶ 19, 44), but Wells Fargo notified Plaintiffs in August 2012 that their modification application was denied (*id.* ¶ 48).  Plaintiffs apparently made no payments during that period.  (*See id.* ¶ 81 (alleging that they were $308,000 in arrears)).  Plaintiffs filed for Chapter 7 bankruptcy on October 31, 2013, and Plaintiffs' debts, including the 2007 Note, were discharged.  (Doc. 8 ¶ 87; Doc. 8 at 41).  The bankruptcy judge lifted the 11 U.S.C. § 362(a) automatic stay with respect to Plaintiffs' property at Franklin Goldmine Road to allow, among other things, "the institution and completion of foreclosure proceedings[.]" (Doc. 9-2).

On May 20, 2016, a foreclosure law firm sent Plaintiffs a Notice of Pending Foreclosure Sale scheduled for July 5, 2016.  (Doc. 11 at 17-18).  The letter informed Plaintiffs that it was being sent on behalf of Wells Fargo, the servicer, and identified Wells Fargo as "the entity or individual designated, who shall have full authority to negotiate, amend and modify all terms of the mortgage," although "such entity or individual is not required by law to negotiate, amend or modify the terms of the loan." (*Id.*).  Plaintiffs were also given a copy of the Notice of Sale Under Power that was submitted for publication (*see id.* at 17), which indicated that Plaintiff's Franklin Goldmine Road property would be sold in a foreclosure

sale on July 5, 2016 (*see* Doc. 9-3).  That Notice identified "HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-10 as agent and Attorney in Fact for Paulette Stripland and David W. Stripland," and stated that HSBC held the Security Deed by virtue of assignment.  (*Id.*).  The Notice also identified Wells Fargo Bank, NA as "the entity or individual designated who shall have full authority to negotiate, amend and modify all terms of the mortgage," but indicated that "such entity or individual is not required by law to negotiate, amend or modify the terms of the loan."  (*Id.*).

On June 10, 2010, Plaintiffs filed a complaint in the Superior Court of Forsyth County against Wells Fargo in which they assert a number of claims arising from the 2007 refinance loan and Wells Fargo's denial of their 2011 modification application.  (Doc. 1-2).  Specifically, Plaintiffs assert the following claims: violations of the Equal Opportunity Credit Act ("ECOA") (Counts II, III, IV, VI); negligent misrepresentation (Count V); Truth in Lending Act ("TILA") (Count VII); fraudulent inducement (Count VIII); and appraisal fraud in violation of the Uniform Standards of Professional Appraisal Practice ("USPAP") (Count IX).[2]  (Doc. 1-2).

---

[2] Plaintiffs include a "Count I" which is titled "FACTS RELEVANT TO ALL COUNTS OF PLAINTIFFS['] COMPLAINT" (Doc. 1-2 at 2), but it is not a separate cause of action.

Plaintiffs also filed a motion and amended motion for temporary restraining order, preliminary injunction, and permanent injunction seeking to restrain and enjoin the scheduled July 5, 2016 foreclosure sale.  (*See* Docs. 2, 3).  Defendant removed the action to this Court on June 27, 2016 (Doc. 1), and District Judge Richard W. Story denied Plaintiffs' motion and amended motion for a temporary restraining order, finding that "Plaintiffs have failed to allege sufficient facts to demonstrate a substantial likelihood of success of any of their claims such that the Court should halt the foreclosure sale of Plaintiffs' property."  (Doc. 5).  The foreclosure sale apparently proceeded.  (*See* Doc. 8 ¶ 87).

On July 5, 2016, Defendant filed a motion to dismiss Plaintiffs' Complaint (Doc. 6), and on August 14, 2016 Plaintiffs filed a response to Defendant's motion (Doc. 7) and an Amended Complaint in which they assert a claim for wrongful foreclosure (Count X), in addition to the claims alleged in their original complaint (Doc. 8).  Defendant filed a motion to strike Plaintiffs' Amended Complaint (Doc. 9) and a reply in support of its motion to dismiss (Doc. 10).  Plaintiffs responded to the motion to strike (Doc. 11), and Defendant filed a reply (Doc. 13).  With briefing complete, the undersigned now considers the merits of Defendant's motions.

## Discussion

## I.    Defendant's Motion To Dismiss Original Complaint (Doc. 6)

Defendant moves to dismiss Plaintiff's Complaint on the grounds that it is barred by the "two dismissal" rule set forth in FED. R. CIV. P. 41(a)(1)(B), and they also seek dismissal pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim on which relief can be granted.  (*See generally* Doc. 6-1).

### A.    <u>Two Dismissal Rule</u>

Defendant contends that Plaintiffs' Complaint should be dismissed pursuant to the "two dismissal rule" set out in Fed. R. Civ. P. 41(a)(1)(B) because Plaintiffs have previously filed and voluntarily dismissed two lawsuits against Wells Fargo "involving claims related to the Loan and a potential foreclosure sale."  (Doc. 6-1 at 5-6; *see also* Docs. 6-4 through 6-7).  "As a result," Defendant argues, "Plaintiffs' prior lawsuits place[] them squarely within Rule 41(a)(1)(B) and the two-dismissal rule."  (*Id.* at 6).  Rule 41 provides:

> Unless the notice or stipulation states otherwise, the dismissal is without prejudice.  But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

FED. R. CIV. P. 41(a)(1)(B).  In June 2012 Plaintiffs filed (and later voluntarily dismissed) a "Verified Application and Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction" filed against HSBC, Wells Fargo, and the foreclosure law firm, seeking to prevent a foreclosure sale on the ground that the assignment of the Security Deed to HSBC "is invalid and the Defendants have no right to exercise the power of sale provision in the Security

Deed." (*See* Doc. 6-4 at 1, 3; Doc. 6-5 at 1). In October 2012, Plaintiffs filed (and later voluntarily dismissed) a "Verified Petition To Quiet Title And Motion For Appointment Of Special Master" against HSBC and Wells Fargo in which they again challenged Defendants right to foreclose on their property based on allegations concerning the improper securitization of their loan and assignment of the Security Deed to HSBC. (*See* Docs. 6-6, 6-7).

Plaintiffs contend that the two dismissal rule does not bar this action because "[t]he lawsuit as set out by Plaintiffs herein, when considered in their entirety, shows that the cause of actions have not been filed or litigated before." (Doc. 7 at 13). In this case, Plaintiffs have asserted alleged claims based on alleged violations of the ECOA and TILA, as well as claims of fraud. (*See* Doc. 1-2). It is not clear that their previous actions were "based on or includ[ed] the same claim(s)" as contemplated by Rule 41(a)(1)(B) because the focus of those actions appears to have been to challenge the defendants' "standing" or right to foreclose on their property due to an allegedly invalid assignment of the Security Deed. Accordingly, the undersigned finds that Defendant has not shown that dismissal of Plaintiffs' original Complaint is appropriate based on the "two dismissal" rule, but instead finds that dismissal is appropriate for the reasons discussed below.

### B.   **Failure To State A Claim**

#### 1.   **Applicable Pleading Standards**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Redland Co. v. Bank of Am. Corp.*, 568

F.3d 1232, 1234 (11th Cir. 2009) (explaining that "[t]o survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed" (internal quotation omitted)).

### 2.   <u>Plaintiffs' Claims</u>

#### a.   <u>Count II ECOA Claim</u>

In Count II, Plaintiffs allege that Defendants violated the ECOA in relation to their April 2007 refinance loan.  (*See* Doc. 1-2 ¶¶ 27-35).  The factual support for this claim is somewhat unclear, but Plaintiffs appear to allege that Defendant violated the ECOA by taking the 2007 loan application over the phone rather than in writing; that Defendant approved the loan without documentation even though David Stripland's credit score "did not qualify for stated income, stated assets, cash out loan"; and Defendant included "false and fraudulent" information on the loan application.  (*Id.*).

Defendant argues that the ECOA claim asserted in Count II is barred by the applicable two year statute of limitations for such claims.  (Doc. 6-1 at 6-7).  Prior to July 2011, the statute of limitations for ECOA claims was two years.  *See Cannon v. Sec'y, United States Dep't of Agric.*, 649 Fed. Appx. 892, 894 (11th Cir. 2016) (unpublished decision) (explaining that "As part of the Dodd-Frank Wall Street Reform and Consumer Protection Act . . ., Congress extended the statute of

limitations period for ECOA claims from two years to five years," effective July 2011, and holding "that ECOA's amended five-year limitations period is not retroactive"). "Under ECOA, the limitations period begins to run on 'the date of the occurrence of the violation[,]' 15 U.S.C. § 1691e(f)." *Id.* "Under the ECOA, 'the violation occurs, and the limitations period begins to run, upon the signing of the note.' " *Federer v. Midland Mortg. Co.*, No. 1:12-CV-2492-TWT, 2012 U.S. Dist. LEXIS 166188, at *18 (N.D. Ga. Nov. 21, 2012) (quoting *Oliver v. LIB Props., Ltd.*, No. 1:10-cv-0539-TWT-JFK, 2010 U.S. Dist. LEXIS 72692, at *20 (N.D. Ga. June 21, 2010), *adopted by* 2010 U.S. Dist. LEXIS 72811 (N.D. Ga. July 20, 2010)); *see also Rust v. Boswell*, No. 1:11-CV-03404-JEC-JFK, 2013 U.S. Dist. LEXIS 193384, at *44 (N.D. Ga. Oct. 4, 2013) (" 'Courts interpreting the ECOA under facts similar to these have consistently held that the violation occurs, and the limitations period begins to run, upon the signing of the note." (quoting *Stern v. Espirito Santo Bank of Fla.*, 791 F. Supp. 865, 868 (S.D. Fla. 1992)), *adopted by* 2014 U.S. Dist. LEXIS 189957 (N.D. Ga. Feb. 28, 2014). Thus, because the loan documents were signed in April 2007 (*see* Doc. 1-2 ¶¶ 14-15), Plaintiffs' Count II ECOA claim based on violations that occurred no later than April 2007 is barred by the applicable two-year statute of limitations. *See, e.g.*, *Cannon*, 649 Fed. Appx. at 896 (affirming dismissal of ECOA claim that was filed more than two years after the claim accrued); *Rust*, 2013 U.S. Dist. LEXIS

193384, at *44 (finding that ECOA claims were not filed timely because they were filed more than three years after the loan documents were signed); *Federer*, 2012 U.S. Dist. LEXIS 166188, at *18-19 (finding that ECOA claim should be dismissed because the plaintiff "was issued the allegedly discriminatory loan on March 17, 2006, and she filed the instant case on July 18, 2012, over five years after the limitations period began to run").

The undersigned acknowledges that ECOA's statute of limitations is "subject to equitable tolling in cases where the debtor has been prevented from bringing suit due to extraordinary circumstances that prevented him from bringing suit despite his diligent efforts." *Rust*, 2014 U.S. Dist. LEXIS 189957, at *3-4 (citing *Robinson v. Schafer*, 305 Fed. Appx. 629, 630 (11th Cir. 2008) (unpublished decision)). Equitable tolling is "an extraordinary remedy which should be extended only sparingly," and "[t]he burden is on the plaintiff to show that equitable tolling is warranted." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993). Plaintiffs have not alleged any facts in their complaint that would warrant the application of equitable tolling, nor have they argued in their response to Defendant's motion that it applies. (*See* Doc. 7). Therefore they have not met their burden to show that equitable tolling is warranted.

Because Plaintiffs' ECOA claim based on their 2007 loan is time-barred, it is **RECOMMENDED** that Defendant's motion to dismiss that claim (Count II) be

**GRANTED**.

### b.    <u>Count III ECOA Claim</u>

In Count III, Plaintiffs allege that they provided Defendant with an application to modify their loan in April 2011, but Defendant failed to notify them within 30 days of receipt of their modification application of Defendant's denial of the application, in violation of 15 U.S.C. § 1691(d)(1) and "HAMP directives." (Doc. 1-2 ¶¶ 36-51).  Instead, "Defendant grossly exceeded the time frame required by that of the HAMP directives and took approximately nineteen months to evaluate and communicate its decision to Plaintiff" in August 2012.  (*Id.* ¶¶ 46, 48).  Plaintiffs further allege that that Defendant's written notification of its decision did not comply with ECOA's notification requirements set forth in 15 U.S.C. § 1691(d)(2) because "the notification failed to provide Plaintiff with a specific statement of reasons for the adverse action taken."  (*Id.* ¶ 49).  15 U.S.C. § 1691(d) provides in relevant part:

> (1) Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.
> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor.

15 U.S.C. § 1691(d)(1) & (2).

Defendant contends that Plaintiffs' Count III ECOA claim fails because Defendant did not take an adverse action against Plaintiffs for purposes of the

ECOA and because the Home Affordable Modification Program ("HAMP") does not provide for a private right of action.  (Doc. 6-1at 8-9).  The undersigned agrees. "To be liable under the ECOA, a creditor must take an 'adverse action' against the plaintiff."  *Molina v. Aurora Loan Servs.*, 635 Fed. Appx. 618, 624 (11th Cir. 2015) (citing 15 U.S.C. § 1691(d)).  "The Act defines 'adverse action' as 'denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested.' "  *Id.* (quoting 15 U.S.C. § 1691(d)(6)).  "It also carves out exceptions for actions that are not considered 'adverse actions,' " including "the refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default."  *Id.* (citing 15 U.S.C. § 1691(d)(6)).  "The regulations propagated under the ECOA similarly exclude from the definition of 'adverse action' any action or forbearance taken with respect to an account that is delinquent or in default."  *Id.* (citing 12 C.F.R. § 202.2(c)(2)(ii)).

Here, Plaintiffs were in default on their loan when they applied to modify the loan.  (*See* Doc. 1-2 ¶¶ 16-20).  Thus, Defendant did not take "adverse action" against them under the ECOA when it allegedly failed to notify them within 30 days of their application that their modification application was denied or allegedly failed to notify them of the reasons for that denial.  *See, e.g.*, *Molina*, 635 Fed. Appx. at 624 (finding that the plaintiff's ECOA claim was properly dismissed

because she had "not alleged that she suffered an adverse action within the meaning of the ECOA where she "had already defaulted on her mortgage loan when she requested a loan modification.  Under the plain language of the ECOA and its regulations, Aurora's and Nationstar's refusal to allow Ms. Molina to modify her loan, which was in foreclosure, does not constitute an adverse action and is therefore not actionable."); *Harris v. Chase Home Fin., LLC*, No. 4:11-CV-0116-HLM, 2011 U.S. Dist. LEXIS 157954, at *44 (N.D. Ga. Dec. 21, 2011) ("Here, based on Plaintiffs' own allegations, Plaintiffs were in default when they applied for the Trial Period Plan.  Under those circumstances, Plaintiffs were not entitled to an adverse action notice under the ECOA," and therefore their ECOA claim "fails as a matter of law."), *aff'd* 524 Fed. Appx. 590 (11th Cir. 2013).  Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiffs' Count III ECOA claim be **GRANTED** and that claim be **DISMISSED**.

Although it is not entirely clear whether Plaintiffs intended to assert a claim under HAMP, Plaintiffs allege in Count III that Defendant violated "HAMP directives."  (Doc. 1-2 ¶¶ 45-47).  Defendant correctly contends, however, that HAMP does not provide a private right of action.  *See Molina*, 635 Fed. Appx. at 626 (explaining that "HAMP provides mortgage servicers with guidelines they must follow, including guidelines for the modification of mortgage loans," but finding that the plaintiff "has no claim under HAMP" because the Eleventh Circuit

has "held that no private right of action exists under HAMP" (citing *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012)).  Accordingly, it is also **RECOMMENDED** that, to the extent Plaintiffs assert a HAMP claim in Count III, Defendant's motion to dismiss that claim be **GRANTED**.

### c.    Count IV ECOA Claim

In Count IV, Plaintiffs allege that Defendant discriminated against Mrs. Stripland by requiring her to "guarantee the mortgage note on their property issued for her husbands' loan," in violation of the ECOA.  (Doc. 1-2 ¶ 54).  The ECOA "makes it unlawful for any creditor to discriminate against any applicant on the basis of race, color, religion, national origin, sex, marital status, or age."  *Molina*, 635 Fed. Appx. at 624.  In support of their ECOA marital status discrimination claim, Plaintiffs cite 12 C.F.R. § 202.7(d), which provides that "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, or any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." (*See* Doc. 1-2 ¶ 54).  Plaintiffs also cite to 12 C.F.R. § 202.7(d)(6), which provides that "[a] creditor shall not impose requirements upon an additional party that the creditor is prohibited from imposing upon an applicant under this section."  (Doc. 1-2 ¶ 56).  Plaintiffs allege that "Defendants [sic] illegally obtained the personal guaranty of Ms. Stripland because she was simply the spouse of Mr. Stripland" and

further allege that "David Stripland could have qualified for the initial loan of $900,000 on his own credit worthiness, and without the addition of Paulette Stripland." *Id.* ¶¶ 55, 57).

The undersigned finds that Plaintiffs have failed to state a claim for marital status discrimination under the ECOA.  Plaintiffs allege that Defendant required Mrs. Stripland to guarantee the 2007 loan simply because she was married to Mr. Stripland, but Plaintiffs elsewhere allege that *they* applied for the 2007 refinance loan, thus making her a joint applicant, and that the property that secured the 2007 loan was *their* property.  (*See* Doc. 1-2 ¶¶ 11, 12 (in 2001 "*Plaintiffs* purchased their current homestead for approximately $650,000, located at 5352 Franklin Goldmine Road, Cumming, Georgia" and "*Plaintiffs* executed a 30-year promissory note . . . and a Security Deed"); ¶ 7 ("Defendant fraudulently induced *Plaintiffs* into a mortgage note in 2007 *they* could not afford"); ¶ 14 ("*Plaintiffs* in 2007 were contacted on several occasions by Wells Fargo encouraging *Plaintiffs* to refinance their property" and "*Plaintiffs* agreed and Wells Fargo secured the finance loan on April 27, 2007"); ¶ 15 ("*Plaintiffs* executed on April 27, 2007, a Note . . . and a Security Deed to Wells Fargo as Grantee"); ¶ 27 ("In April 2007 *Plaintiffs* refinanced their property with Defendants and consolidated with cash out into a new loan . . . . *Plaintiffs* requested a thirty year fixed mortgage, which *they* signed without being give[n] a chance to read")) (emphases added).  Moreover,

contrary to Plaintiffs' conclusory allegation that Mr. Stripland "could have qualified for the initial loan of $900,000 on his own credit worthiness" (Doc. 1-2 ¶ 57), Plaintiffs allege elsewhere in their complaint in support of a separate claim that he "did not qualify" for the loan based on his credit score. (*Id.* ¶ 28).  Thus, the undersigned finds that Plaintiffs have not stated a marital discrimination claim under the ECOA by virtue of Defendant's requirement that Mrs. Stripland also promise to repay Plaintiffs' 2007 loan, secured by their property.

Moreover, the statute of limitations clearly bars this claim.  The loan at issue was made in April 2007, but Plaintiffs did not file this action until almost 9 years later.  Nor have Plaintiffs alleged facts or otherwise shown that equitable tolling applies.  Thus, the claim is untimely.  In order to overcome the statute of limitations problem, however, Plaintiffs allege in Count IV that "Paulette Stripland is asserting her affirmative defenses in this action for the purpose of recoupment as defined in the Iowa Supreme Court case of *Bank of the West v. Kline*, 782 NW 2d 453 (2010)."  (Doc. 1-2 ¶ 54).  In *Kline*, the plaintiff bank brought an action against the defendant debtors to collect on guaranties that they had signed, and the court allowed the defendants to assert time-barred ECOA violations as *affirmative defenses*.  *See Kline*, 782 N.W. 2d at 462-63.  Plaintiffs' reliance on *Kline* is misplaced because they are not asserting affirmative defenses.  Instead, they are asserting affirmative causes of action against Wells Fargo, including "an order of

recoupment or setoff" in the amount of approximately $290,000 that Mrs. Stripland

"paid from her personal funds" because she was included on the mortgage note.[3]

(Doc. 1-2 ¶¶ 57-58).

Nor have Plaintiffs cited Eleventh Circuit or Georgia authority, controlling

or otherwise, that indicates that a time-barred ECOA claim can proceed where a

plaintiff asserts a right to recoupment as an affirmative claim or defense.[4]   To the

contrary, in *Rodgers v. First Union Nat'l* Bank, 470 S.E. 2d 246 (Ga. Ct. App.

1996), the Georgia Court of Appeals held that an alleged violation of the ECOA

"cannot be asserted as an affirmative defense to void a guaranty, but only as a

compulsory counterclaim," but not if the ECOA counterclaim is barred by the

applicable statute of limitations.   *Id.* at 248-49.   The court rejected the plaintiff's

argument that "an exception to the two-year limit [for ECOA claims] was

permitted in *Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28 (3rd

Cir. 1995) (holding exception to two-year statute of limitations possible where

guarantor spouse raises violation of the ECOA at her first opportunity as defense to

recoupment)" because "this Court is not bound by decisions of other states or

---

[3] OCGA 13-7-2 provides that recoupment "is a right of the defendant to have a
deduction from the amount of the plaintiff's damages [because] the plaintiff has
not complied with the cross-obligations or independent covenants arising under the
contract upon which suit is brought."

[4] In addition, even if Plaintiffs could assert an action for recoupment in this case
based on a time-barred ECOA claim, they have failed to state claim for marital
status discrimination under the ECOA, as discussed above.

federal courts except the United States Supreme Court, and [the Court of Appeals did] not find the reasoning in *Silverman* persuasive." *Id.* at 249.

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's Count IV ECOA claim be **GRANTED**.

### d.   <u>Count V Negligent Misrepresentation</u>

"In Georgia, the 'essential elements of a claim for negligent misrepresentation are (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.' " *Anderson v. Athene Annunity & Life Assur. Co.*, No. 1:16-CV-1637-CAP, 2016 U.S. Dist. LEXIS 91979, at *9 (N.D. Ga. June 23, 2016) (quoting *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 724 S.E. 2d 53, 60 (Ga. Ct. App. 2012)).   Plaintiffs allege that Defendant made false statements when it "communicated to Plaintiff through his online account and through its telephone representatives that his modification was pending on numerous occasions for approximately 19 months from beginning approximately April 2011 until August 2012." (Doc. 1-2 ¶ 61).

Defendant argues that this claim fails because Plaintiffs failed to plead sufficient facts to state a claim for negligent misrepresentation nor have they pled that claim with the particularity required by Rule 9(b) for pleading fraud claims.

(Doc. 6-1 at 10-12).  Plaintiffs did not respond to those arguments or discuss their negligent misrepresentation claim in their response brief (*see generally* Doc. 7), and therefore they have abandoned that claim.  *See, e.g.*, *McDaniel v. Wells Fargo Bank, N.A.*, No. 1:14-cv-2337-WSD, 2016 U.S. Dist. LEXIS 34562, at *14-15 (N.D. Ga. Mar. 17, 2016) (dismissing as abandoned the plaintiff's theft by receiving claim because she did "not oppose, or otherwise response to, Defendants' arguments" in support of dismissal of that claim).

Even if the Court considers the merits of Defendant's arguments in support of dismissal of this claim, it should be dismissed because Plaintiff has failed to state a negligent misrepresentation claim on which relief can be granted.  As Defendant correctly asserts, Plaintiffs have not alleged facts that plausibly show that Defendant made any false representations to Plaintiffs.  Plaintiffs allege that Defendant repeatedly told them that their modification application was pending (Doc. 1-2 ¶ 61), but they have not alleged facts to show that that representation was false.  Nor have Plaintiffs alleged that Defendant ever promised them it would grant a modification or that Defendant agreed to modify the loan.  Thus, Plaintiffs failed to allege facts that plausibly show that Defendant negligently supplied "false information to foreseeable persons," and therefore they have failed to state a claim for negligent misrepresentation.

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss

Plaintiff's negligent misrepresentation claim (Count V) be **GRANTED**.

### e.   Count VI ECOA Claim

Plaintiffs allege that Defendant violated the ECOA by denying their request to modify their loan based on their age.  (Doc. 1-2 ¶¶ 68-71).  As discussed above, because Plaintiffs were in default when they sought the modification in April 2011, Defendant did not take "adverse action" against them by denying their modification, as the ECOA defines that term.  Accordingly, Plaintiffs have failed to state under the ECOA for Defendant's alleged discrimination against them because of their age.  *See, e.g.*, *Molina*, 635 Fed. Appx. at 624.  It is therefore **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's Count VI ECOA claim be **GRANTED**.

### f.   Count VII TILA Claim

Plaintiffs allege that Defendant failed to provide them with required TILA disclosures at the time of the April 2007 loan.  (Doc. 1-2 ¶¶ 74-78).  Defendant moves to dismiss this claim because it is barred by TILA's one-year statute of limitations.  (Doc. 6-1 at 12-13).  Plaintiffs did not respond to Defendant's argument about their TILA claim or address that claim in their response (*see* Doc. 7), and therefore they appear to have abandoned it.  Moreover, the claim should be dismissed because Plaintiffs filed it well past the applicable one-year statute of limitations for TILA non-disclosure claims.  Damages claims under TILA for non-

disclosure must be brought "within one year from the date of the violation." 15 U.S.C. § 1640(e). The Eleventh Circuit "has observed that a TILA nondisclosure 'violation "occurs" when the transaction is consummated,' in other words, at the time of closing of a residential mortgage transaction." *Frazile v. EMC Mortg. Corp.*, 382 Fed. Appx. 833, 838 (11th Cir. 2010) (unpublished decision) (quoting *Smith v. Am. Fin. Sys., Inc.*, 737 F.2d 1549, 1552 (11th Cir. 1984)). Here, Plaintiffs closed on the loan at issue in April 2007, and therefore their TILA claim, filed over 9 years later, is time-barred.

The undersigned acknowledges that "TILA's limitations period is subject to equitable tolling … in cases where the debtor has been prevented from bringing suit due to inequitable circumstances." *Velardo v. Fremont Inv. & Loan*, 298 Fed. Appx. 890, 892 (11th Cir. 2008) (unpublished decision) (citing *Ellis v. GMAC*, 160 F.3d 703, 706 (11th Cir. 1998)). Plaintiffs do not allege facts in their complaint that plausibly show that equitable tolling is warranted, nor have they argued in response to Defendant's motion to dismiss that equitable tolling applies.

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiffs' TILA claim (Count VII) be **GRANTED**.

### g. Count VIII Inducement By Fraud Claim

Under Georgia law, a plaintiff alleging a claim for fraud must establish five elements: "(1) a false representation by a defendant, (2) scienter, (3) intention to

induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff,

and (5) damage to plaintiff." *Summit Auto. Grp., LLC v. Clark*, 298 Ga. App. 875,

880, 681 S.E.2d 681 (Ga. Ct. App. 2009) (citation and punctuation omitted).   In

addition, FED. R. CIV. P. 9(b) requires that a claim for fraud be pled "with

particularity."   To comply with Rule 9(b), a plaintiff must allege:

> (1) precisely what statements were made in what documents or oral
> representations or what omissions were made, and
> (2) the time and place of each such statement and the person
> responsible for making (or, in the case of omissions, not making)
> same, and
> (3) the content of such statements and the manner in which they
> misled plaintiff, and
> (4) what the defendants obtained as a consequence of the fraud.

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1310 (11th Cir.

2002).   In other words, "to avoid dismissal, a complaint alleging fraud must plead

the 'who, what, when, where and how' of the alleged fraud."   *Graham v. Mortgage*

*Electronic Registration Systems, Inc.*, Civil Action No. 2:11–CV–00253–RWS,

2012 U.S. Dist. LEXIS 20704, at *8 (N.D. Ga. Feb. 17, 2012) (citing *Mathis v.*

*Velsicol Chemical Corp.,* 786 F.Supp. 971, 976–77 (N.D. Ga. 1991)).

Plaintiffs allege that "Defendant made knowingly false statements when they

were told they must be three (3) months in arrears of their mortgage payments in

order to qualify for a mortgage modification application," and then "continued to

demand more and more documents . . . all along knowing they would never

approve of a mortgage modification."   (Doc. 1-2 ¶ 81).   Plaintiffs "further allege

Wells Fargo intended to induce them into mortgage default for the specific purpose of foreclosure, by causing Plaintiffs arrearage to default so great that Plaintiffs would not be in a financial position and get so far in arrears they could not pay all the arrearage." (*Id.*).  Defendant argues that Plaintiffs' fraud claim, to the extent that it is premised on Defendant's statements made before Plaintiffs requested modification in April 2011, is barred by Georgia's four-year statute of limitations for fraud claims.  (Doc. 6-1 at 13-14).  Defendant also argues that the claim fails because Plaintiff has not satisfied Rule 9's requirements for pleading fraud claims with particularity.  (*Id.* at 14).  Plaintiffs did not respond to those arguments.

As Defendant contends, Plaintiffs have failed to state a fraud claim under Georgia law or satisfy Rule 9's pleading requirements.  In the first place, they have failed to allege facts that plausibly show that Defendant made false representations to them.  Plaintiffs have not alleged that Defendant promised that it would grant a modification or agreed to modify the loan if Plaintiffs fell behind on their mortgage payments.  Plaintiffs simply allege that Defendant told them that "they must be at least three (3) months in arrears on their mortgage before Wells Fargo could even look at modifying their loan."  (Doc. 1-2 ¶ 16).  Plaintiffs also allege that Defendant "stretched out the modification process" and "intended to induce them into mortgage default for the specific purpose of foreclosure, by causing Plaintiff's arrearage to default so great that Plaintiffs would not be in a financial position and

24

get so far in arrears they could not pay all the arrearage," i.e., "approximately $308,000." (*Id.* ¶ 81).  But Plaintiffs do not allege that Defendant told them to stop making their mortgage payments entirely.  Instead, Defendant told them it could not consider their request to modify until they were at least three months behind. (*Id.* ¶¶ 16, 81).  Thus, Plaintiffs have not alleged facts that plausibly show that Defendant made false statements or promises to them that induced them to incur a $308,000 arrearage.  "When a bank tells borrowers that to qualify for a modification they have to be behind on the mortgage, it has not told them to stop paying their mortgage.  This unsubtle distinction makes a difference.  And if [Plaintiffs] missed it that is their fault, not [Defendant's]." *Sheely v. Bank of Am.*, 36 F. Supp. 3d 1364, 1379 (N.D. Ga. 2014); *see also Watts v. JPMorgan Chase Bank*, No. 1:13-CV-00866-RWS, 2013 U.S. Dist. LEXIS 100136, at *9-10 (N.D. Ga. July 17, 2013) (finding that the plaintiff failed to state claim for promissory estoppel where "[f]rom the face of the Complaint, Plaintiff in fact only alleges that Chase 'instructed Plaintiff to request assistance when at least two mortgage payments behind,' " because "this statement does not allege a promise by Chase to do anything").

Moreover, Plaintiffs have not alleged with any specificity who made the alleged false statements or when these statements were made. In *Sheely*, the plaintiffs similarly alleged that Bank of America told they that they would have to

fall behind on their mortgage payments three to six months in order to meet the criteria for an in-house modification, but then after the plaintiffs fell behind and applied for modification, Bank of America continued to request additional documents over several months and never modified the loan, leading to multiple attempted foreclosures.  36 F. Supp. 3d at 1370-71.  The court dismissed their fraud claim arising from those allegations because the plaintiffs failed to plead that claim with the particularly required by Rule 9(b) because they did not allege when the alleged misleading representations were made, whether they were made orally or in writing, or who made the alleged misrepresentations.  *Id.* at 1373-74.  Those same shortcomings are also present here in this case, and therefore it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's inducement by fraud claim (Count VIII) be **GRANTED**.

### h.    <u>Count IX Appraisal Fraud Claim</u>

Plaintiff alleges that "Defendant intentionally and fraudulently created a false appraisal value" when Plaintiffs refinanced their loan in April 2007 by inflating the value of their property at "approximately twice the value of the Forsyth County Tax assessed value," apparently in violation of the Uniform Standards of Professional Appraisal Practice ("USPAP").  (Doc. 1-2 ¶¶ 84-86).  Defendant argues that to the extent that Plaintiffs assert a fraud claim in this Count, it is barred by Georgia's four-year statute of limitations on fraud claims, and to the

extent Plaintiffs allege violations of the USPAP, the USPAP "sets forth ethical and performance standards for appraisals and does not provide a private right of action." (Doc. 6-1 at 15). Again, Plaintiffs did not respond to Defendant's arguments about this claim or otherwise address it (*see* Doc.7), and therefore, they have abandoned it. Nevertheless, even if the Court reaches the merits of Defendant's arguments, this claim should be dismissed because this claim is barred by Georgia's four-year statute of limitations for fraud claims. *See* O.C.G.A. § 9-3-31; *see also Allmond v. Young*, 723 S.E.2d 691, 694 (Ga. Ct. App. 2012) ("The statute of limitation on a fraud claim is four years." (citing O.C.G.A. § 9-3-31)). Here, Plaintiffs allege that Defendant fraudulently inflated the appraisal of Plaintiff's property in April 2007 in connection with their refinance loan and fraudulently misrepresented the value of their property when they bought it in 2001 in order to justify the amount of the 2007 loan. (Doc. 1-2 ¶¶ 84-85). Because Plaintiffs filed this action more than four years after the alleged fraud was committed, it is time-barred. Nor have Plaintiffs alleged facts that plausibly show that Defendant concealed their alleged fraud or that otherwise support the application of equitable tolling.

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiffs' fraudulent appraisal claim (Count IX) be **GRANTED**.

### i. <u>Punitive Damages, Attorney's Fees, Costs</u>

Defendant moves to dismiss Plaintiffs' request for punitive damages because Plaintiffs' underlying substantive claims fail, and it moves to dismiss Plaintiffs' request for attorney's fees and costs under O.C.G.A. § 13-6-11 because Plaintiffs have not made any allegation that Defendant has acted in bad faith, been stubbornly litigious, or has caused Plaintiffs unnecessary trouble and expense as required by the statute.  (Doc. 6-1 at 15-16).  Because Plaintiffs have failed to state a claim on which relief can be granted, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's requests for punitive damages, attorney's fees, and costs be **GRANTED**.  *See, e.g.*, *Giles v. SunTrust Mortg., Inc.*, No. 1:13-CV-2992-RWS, 2014 U.S. Dist. LEXIS 83310, at *9 (N.D. Ga. June 19, 2014) (dismissing the plaintiff's claims for equitable relief, injunctive relief, declaratory relief, punitive damages, and attorney's fees "[b]ecause Plaintiff's substantive claims are without merit," and therefore "he is not entitled to the relief he seeks").

## II.    <u>Defendant's Motion To Strike Amended Complaint (Doc. 9)</u>

Defendant moves to strike Plaintiffs' Amended Complaint (Doc. 8) on the grounds that it is untimely and because it is futile and subject to dismissal.  (Doc. 9).  The undersigned agrees.

### A.    <u>Untimeliness</u>

Defendant filed its motion to dismiss Plaintiff's complaint on July 5, 2016, and Plaintiffs' attorney, a registered user with the Court's electronic filing system

CM-ECF, was sent a Notice of Electronic Filing ("NEF") via email through CM-ECF on that date. (*See* NEF for Doc. 5). Pursuant to Federal Rule Civil Procedure 15, Plaintiffs then had 21 days from the date of service of that motion to file an amended complaint as a matter of course. FED. R. CIV. P. 15(a)(1)(B). Otherwise, Plaintiffs were required to obtain leave of court or Defendant's permission to file an amended complaint. FED. R. CIV. P. 15(a)(2). Plaintiffs did not file their Amended Complaint until August 14, 2016 (Doc. 8), almost three weeks after their deadline for filing an amended complaint as a matter of course. Nor did they seek the Court's leave to file or show that Defendant consented to the amendment. Thus, Plaintiffs' Amended Complaint is due to be stricken because it was not filed within the time provided for filing an amended pleading as a matter of course and because Plaintiffs did not obtain the Court's leave prior to filing.

Plaintiffs contend, however, that their Amended Complaint is not untimely because Defendant mailed a copy of its motion to dismiss to Plaintiffs' old address, and therefore Plaintiffs were not served with the motion to dismiss on July 5, 2016. (Doc. 11 at 2). They assert that "[a]ctual notice was received by Plaintiff's counsel on July 26, 2016 when he received notice, as stated in his affidavit [attached to Plaintiffs' response to the motion to strike], from the Office of the Clerks office, of this Court that the action was assigned to the magistrate judge."[5] (Doc. 11 at 3).

---

[5] The referenced July 26, 2016 notification appears to be the NEF for the Clerk's

Rule 5(b)(3) provides, "If a local rule so authorizes, a party may use the court's transmission facilities to make service under Rule 5(b)(2)(E)," which states that "[a] paper is served under this rule by . . . sending it by electronic means if the person consented in writing—in which event service is complete upon transmission, but is not effective if the serving party learns it did not reach the person to be served[.]"  FED. R. CIV. P. 5(b)(2)(E), 5(b)(3).  This Court's Local Rules authorize parties to "use the court's transmission facilities to make service under Rule 5(b)(2)(E)."  *See* LR 5.1 NDGa.; Standing Order No. 16-01.  Moreover, the Court's Standing Order No. 16-01, Revised Electronic Filing Standing Order and Administrative Procedures, provides in relevant part that "[r]eceipt of an Electronic Filing login and password constitutes a request for electronic service and electronic notice pursuant to the Federal Rules of Civil Procedure[.]"  Standing Order No. 16-01, App. H-4.  Thus, contrary to Plaintiffs' contention that their counsel did not "agree to be served only by email" (Doc. 11 at 3), their attorney's receipt of a CM-ECF login and password "constituted a request for electronic service and electronic notice[.]"  The Court's "Administrative Procedures For Filing, Signing, And Verifying Pleadings And Papers By Electronic Means" also provide, "If the recipient is a registered participant of ECF, the 'Notice of Electronic Filing' shall be the equivalent of service of the pleading

---

submission of Defendant's motion to dismiss to the undersigned.

or other paper by first class mail, postage prepaid." App. H-A9. Here, the Court sent Plaintiff's attorney, a registered participant of ECF, an NEF via email on July 5, 2015. That notice was "the equivalent of service" of Defendant's motion to dismiss by first class mail, and therefore it is irrelevant that Defendant mailed a copy of the motion to dismiss to the incorrect address. Plaintiffs were served the motion to dismiss on July 5, 2016 through the Court's electronic filing system as provided for in its Local Rules and authorized by Rule 5(b)(3). Therefore, Plaintiffs' Amended Complaint, filed August 14, 2016, was not filed within 21 days of service of the motion to dismiss, and Plaintiffs should have obtained leave of court or the consent of Defendant to file it. Because they did not, it is due to be stricken.

### B. <u>Futility</u>

Moreover, even if Plaintiffs had requested leave to amend their complaint, it would be futile to grant such leave. Rule 15 provides that "[t]he court should freely give leave when justice so requires," FED. R. CIV. P. 15(a)(2), but "a district court need not allow an amendment where it would be 'futile.' " *Shepherd v. Wilson*, No. 16-10416, 2016 U.S. App. LEXIS 18154, at *12 (11th Cir. Oct. 6, 2016) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). " 'Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the

defendant.' " *Id.* (quoting *Cockrell*, 510 F.3d at 1310). Here, granting leave to amend Plaintiffs' complaint would be futile because the Amended Complaint "would still be properly dismissed."

Other than adding a wrongful foreclosure claim (Count X), Plaintiffs' Amended Complaint is identical to their original complaint, and they re-assert all the claims they asserted in their original complaint (*compare* Doc. 1-2 ¶¶ 1-86 *with* Doc. 8 ¶¶ 1-86). For the reasons discussed above, Plaintiffs failed to state a claim on which relief can be granted in their original complaint and therefore it would be futile to allow them to file an amended complaint in which they reassert those claims.

Turning to Plaintiffs' wrongful foreclosure claim, the undersigned finds it would be futile to allow them to amend their complaint to assert that claim as well. "In order to prevail on a wrongful foreclosure claim in Georgia, the plaintiff must establish that the defendant violated Georgia's foreclosure statutes." *Harris v. Chase Home Fin., LLC*, 524 Fed. Appx. 590, 592 (11th Cir. 2013) (unpublished decision). The plaintiff must also show "(1) a legal duty owed to them by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach and the injury they suffered; and (4) damages." *Joseph v. Fed. Home Loan Mortg. Corp.*, No. 1:12–CV–01022–RWS, 2012 U.S. Dist. LEXIS 159355, at *4 (N.D. Ga. Nov. 6, 2012); *see also Harris*, 524 Fed. Appx. at 592. Plaintiffs allege

that "Defendants [sic] wrongfully and fraudulently foreclosed on Plaintiffs['] property on July 5, 2016. The foreclosure was conducted in the name of Wells Fargo Bank, N.A." (Doc. 8 ¶ 87). Plaintiffs further contend that because the debt underlying the 2007 loan was discharged in bankruptcy:

> the only remaining instrument available to Defendants [sic] for a legal foreclosure . . . would be the Security Deed and the Security Deed that was assigned by Wells Fargo Bank N.A. to HSBC Bank . . . and recorded with the Forsyth County Georgia Recorders Office records on July 13, 2011 . . . . Defendants [sic] did not have legal standing to conduct a foreclosure on Plaintiffs' property.

(*Id.*). It is not clear who Plaintiffs refer to as "Defendants" since they have only sued Wells Fargo Bank, N.A., nor have Plaintiffs alleged facts to support their contention that "Defendants did not have legal standing" to foreclose on their property. That conclusory allegation fails to plausibly demonstrate entitlement to relief and thus Plaintiffs have failed to state a claim for wrongful foreclosure in their Amended Complaint.

The undersigned notes that in response to Defendant's motion to strike their Amended Complaint, Plaintiffs argue that "[s]erious questions remain as to who is the legal entity having standing to foreclose" because Wells Fargo did not hold the Note by virtue of Plaintiffs' bankruptcy, nor did it hold the Security Deed because it assigned the Deed to HSBC. (*See* Doc. 11 at 4-7). Moreover, Plaintiffs challenge HSBC's authority to foreclose based on various allegations concerning securitization of the Note and Security Deed and improper assignment of the

Security Deed to HSBC, including an allegation that HSBC "withdrew from the State of Florida" in 2004 and "ceased to exist some years prior to" the assignment, which listed HSBC's address as "636 Grand Regency Blvd, Brandon, FL 3 3510." (*Id.* at 5-7; *see also id*. at 21).

Putting aside the fact that Plaintiffs did not include those allegations in their Amended Complaint, they are insufficient to state a claim for wrongful foreclosure. First, to the extent that Plaintiffs' claim rests on allegations concerning securitization of the Security Deed (*see* Doc. 11 at 7), courts have repeatedly rejected similar claims. *See, e.g.*, *Williams v. Ocwen Loan Serv. LLC*, No. 1:14-CV-3531-ODE-JSA, 2015 U.S. Dist. LEXIS 180550, at *26 (N.D. Ga. July 31, 2015) ("[C]ourts have uniformly rejected claims that securitization, insurance, or credit default swaps negate a borrower's obligations or a creditor's ability to foreclose." (collecting cases)), *adopted by* 2015 U.S. Dist. LEXIS 180551 (N.D. Ga. Aug. 26, 2015).

Plaintiffs' assertions about the allegedly improper assignment of the Security Deed to HSBC are also insufficient to state a wrongful foreclosure claim because Plaintiffs do not have standing to challenge that assignment as they were not parties to it. *See, e.g.*, *Ashford v. Bank of Am., N.A.*, No. 1:16-CV-1445-WSD-JSA, 2016 U.S. Dist. LEXIS 138046, at *6 (N.D. Ga. Aug. 31, 2016) ("[B]oth the Georgia Court of Appeals and the Eleventh Circuit have specifically held that

borrowers lack standing to challenge the validity of a lender's assignment to which the borrowers were not a party." (collecting cases)); *Ames v. JP Morgan Chase Bank, N.A.*, 783 S.E.2d 614, 619-21 (Ga. 2016) (holding that the plaintiffs had no standing to challenge the validity of the assignment of the security deed to a third party).  As to Plaintiffs' allegation that HSBC "ceased to exist" based on its alleged withdrawal from Florida, the undersigned finds persuasive Defendant's observation that "there is no legal authority for the allegation that the alleged withdrawal of an address nullifies the existence of one of the world's largest financial institutions."  (Doc. 13 at 4).  Furthermore, even if HSBC's address was incorrectly listed on the Assignment, as explained above, Plaintiffs do not have standing under Georgia law to contest the validity of the Assignment.  Moreover, although O.C.G.A. § 44-14-64(g) requires that "[a] transfer of a deed to secure debt shall not be recorded unless it includes the mailing address of the last transferee thereof," it also provides, "Failure to comply with this provision shall not be a defense to any foreclosure or grounds to set aside any foreclosure of any deed to secure debt."

Finally, to the extent that Plaintiffs claim that Wells Fargo improperly foreclosed on their property because they did not hold the Security Deed, that claim also fails.  Under Georgia law, "[i]t is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the

rights of the parties thereto and their privies." *Gordon v. S. Cent. Farm Credit, ACA*, 446 S.E.2d 514, 515 (Ga. Ct. App. 1994).  In *You v. JP Morgan Chase Bank*, 743 S.E.2d 428, 433 (Ga. 2013), the Supreme Court of Georgia concluded that the holder of a security deed is a secured creditor under the Georgia foreclosure statutes and that "the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed." Consequently, because HSBC held the Security Deed by virtue of Wells Fargo's assignment of the Deed, HSBC had the authority to initiate foreclosure proceedings under the power of sale provision in the Security Deed.  The fact that Wells Fargo did not hold the Deed when it acted as HSBC's agent in the foreclosure process is immaterial.   "This Court has recognized that it is 'of no consequence who actually sends the notice [of foreclosure], and that task may properly be delegated to a servicing agent[.]' " *Vieira v. Citigroup, Inc.*, No. 1:12-CV-1636-TWT, 2013 U.S. Dist. LEXIS 9329, at *13 (N.D. Ga. Jan. 23, 2013) (quoting *Stubbs v. Bank of Am.*, 844 F. Supp. 2d 1267, 1271 (N.D. Ga. 2012)). Critically, the Notice of Sale Under Power identified HSBC as the entity that held the Security Deed with the authority to exercise the Power of Sale contained in the Security Deed, and both that Notice as well as the Notice of Pending Foreclosure Sale identified Wells Fargo as "the entity who shall have full authority to

negotiate, amend and modify all terms of the mortgage with the debtor," as required by O.C.G.A. § 44–14–162.2(a). (*See* Doc. 9-3; Doc. 11 at 17-18). "Foreclosure notices 'need not expressly identify the foreclosing party as a "secured creditor." ' " *Clark v. HSBC Bank United States, NA*, No. 1:15-CV-02031-CAP-JFK, 2015 U.S. Dist. LEXIS 181839, at *15 (N.D. Ga. Dec. 7, 2015) (quoting You, 743 S.E. 2d at 434 n.7). "Instead, the foreclosure notice 'need only identify "the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor," which may be the holder of the security deed, the holder of the note, or an attorney or servicing agent.' " *Id.* (quoting *Jackson v. Bank of Am., NA*, 578 Fed. Appx. 856, 861 (11th Cir. 2014) (quoting O.C.G.A. § 44-14-162.2))). "If that individual or entity is someone other than the deed holder or the note holder, such as an attorney or servicing agent, then that person or entity must be identified. The statute requires no more and no less." *You*, 743 S.E.2d at 433-34. "There is nothing in Section 162.2 to indicate that a secured creditor may not utilize an agent to serve notice on a debtor of the initiation of foreclosure proceedings." *LaCosta v. McCalla Raymer, LLC*, No. 1:10-CV_1171-RWS, 2011 U.S. Dist. LEXIS 5168, at *10 (N.D. Ga. Jan. 18, 2011). Thus, Plaintiffs' allegation that Wells Fargo lacked "legal standing" to foreclose because it did not hold the Security Deed is insufficient to state a claim for wrongful foreclosure.

It is therefore **RECOMMENDED** that Defendant's motion to strike Plaintiffs' Amended Complaint (Doc. 9) be **GRANTED** because Plaintiffs did not file their Amended Complaint within 21 days of service of Defendant's motion to dismiss, and it would be futile to allow Plaintiffs to amend their complaint to assert the claims set forth in their Amended Complaint (Doc. 8).[6] *See, e.g.*, *Gaye v. Bank of Am., N.A.*, No. 1:15-CV-0946-CC-CMS, 2016 U.S. Dist. LEXIS 122669, at *25-27 (N.D. Ga. Jan. 7, 2016) (granting motion to strike amended complaint because it was filed more than 21 days after the motions to dismiss were filed without leave of court of the defendants' consent, and it would be futile to grant leave to amend where the proposed amended complaint "suffers from the same flaws as the

---

[6] Even if Plaintiffs did timely file their Amended Complaint so that it is properly before the Court, it should be dismissed for the reasons discussed above. The undersigned recognizes that Defendant moved to strike the Amended Complaint and did not move to dismiss it. A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011). In addition to Plaintiffs having the opportunity to address the issue of whether their Amended Complaint states a claim in response to Defendant's motion to strike, this Report and Recommendation provides the required notice and opportunity to respond. *See Kynes v. PNC Mortg.*, Civil Action File No. 1:12–CV–4477–TWT, 2013 U.S. Dist. LEXIS 125309, at *49-50 n.5 (N.D. Ga. July 25, 2013) (explaining that, "[t]o the extent that the Court has relied on any grounds not asserted by Defendants in recommending dismissal of Plaintiffs' claims and complaint," the report and recommendation provides the plaintiff with adequate notice and an opportunity to respond), *adopted by* 2013 U.S. Dist. LEXIS 125049 (N.D. Ga. Aug. 30, 2013). Thus, in the event the Court finds that Plaintiffs did timely file their Amended Complaint as a matter of course, the undersigned alternatively **RECOMMENDS** that it be dismissed for failure to state a claim on which relief can be granted.

original Complaint"), *adopted by* 2016 U.S. Dist. LEXIS 122666 (N.D. Ga. Feb. 1, 2016).

### <u>Summary</u>

It is **RECOMMENDED** that Defendant's Motion To Dismiss Plaintiff's Complaint (Doc. 6) and Motion To Strike Plaintiffs' Amended Complaint (Doc. 9) be **GRANTED** and that this action be **DISMISSED**.

The Clerk is **DIRECTED** to terminate the reference of this case to the undersigned Magistrate Judge.

**IT IS SO REPORTED AND RECOMMENDED** this <u>3rd</u> day of <u>November</u>, 2016.

       /s/ *J. Clay Fuller*
J. CLAY FULLER
United States Magistrate Judge